**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Gary Haddock, individually and in his capacity as Sellers' Representative, Deborah Haddock, Christopher Haddock and Stephen Haddock, | Case No. 1:24-cv-08216 |
| Plaintiffs and Counterdefendants, | Hon. John Robert Blakey |
| v. | |
| The Middleby Corporation, Alkar Holdings, Inc., and MP Equipment LLC, | |
| Defendants and Counterclaimants. | |

**PLAINTIFFS' MOTION TO
LIFT THE STAY OF WRITTEN DISCOVERY**

Plaintiffs/Counter-Defendants Gary Haddock, Deborah Haddock, Christopher Haddock, and Stephen Haddock (collectively, "Plaintiffs"), by their undersigned attorneys, hereby move to lift the Court's stay of discovery (Dkt. 167) to permit written discovery to proceed. In support of this Motion, Plaintiffs state as follows:

**I.      SUMMARY OF ARGUMENT**

This Motion presents a narrow request to lift the discovery stay to allow party written discovery to proceed.  The parties are already at issue on two breach of contract counts in Plaintiffs' Amended Complaint ("AC"). Indeed, the same scope of written discovery will be required regardless of how the Court resolves the pending cross-motions to dismiss other claims or to compel an accounting arbitration.

Moreover, in the nearly six months since all discovery was stayed, the stay has deepened a severe asymmetry that is prejudicial to Plaintiffs and unfairly advantages Defendants. When the Court granted Defendants' Motion to Stay (the "Stay Motion," Dkt. 165), the Stay Motion had

been noticed for presentment and Plaintiffs had not filed, nor been given a date to file, their response. At that time, Plaintiffs had substantially completed their document production to Defendants while Defendants had then produced—and still today have produced—only approximately 900 curated documents, without producing, for example, the core corporate records about the disputed merger that only Defendants possess. This matters not just because the stay *delays* discovery. Case preparation does not stop because a stay is entered. Witnesses are interviewed. Strategy is refined. Experts can be consulted. Settlement positions are evaluated. Defendants have been free to evaluate Plaintiffs' full production and to develop their positions while withholding their own core records from Plaintiffs. And if the Court resolves either of the pending motions to dismiss by requiring a party to amend its pleading, then Defendants will have the unfair advantage of holding Plaintiffs' full document production, while Plaintiffs will have the disadvantage of having only a select fraction of Defendants' discoverable records.

The unfair advantage did not arise by happenstance. For months, while the Pending Motions remained unresolved, the parties engaged in approximately ten meet-and-confer conferences concerning party discovery, yet in all that time the Defendants never sought a stay. They did so only after Plaintiffs had substantially completed their production and moved to compel Defendants to complete theirs. That asymmetric sequence did not merely delay discovery; it froze discovery at a point when Defendants had Plaintiffs' production in hand, while Plaintiffs still lacked Defendants' central internal records. The result is that Defendants are now in a materially and unfairly better position than Plaintiffs to adjust their claims, defenses, and strategy in response to any forthcoming ruling.

Nor would continued delay meaningfully simplify written discovery. The parties are at issue on Plaintiffs' Counts I and II (for breach of contract). (*See* Alkar's Answer (Dkt. 41),

Counts I and II.) And Defendants The Middleby Corporation ("Middleby") and Alkar have filed a nine-count Counterclaim against Plaintiffs. Whatever the ultimate disposition of the pending motions—to dismiss the Counterclaim (Dkt. 123) and AC Counts III-V (Dkt. 39) and to compel an accounting arbitration (Dkt. 86) (collectively, the "Pending Motions")—the same core custodians, the same time period, and the same body of central documents will remain discoverable. The stay only postpones discovery that will need to be completed.

For these reasons, the stay should be lifted as to party document discovery and interrogatories. If the Pending Motions remain unresolved after party written discovery is substantially complete, the parties can confer and return to the Court to address whether and to what extent, if any, the stay should then be lifted as to any party depositions and/or third-party discovery.[1]

## II.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Pending Pleadings And Motions

Plaintiffs filed suit on September 9, 2024 (Dkt. 6) and their Amended Complaint on December 13, 2024 (Dkt. 32). Alkar answered AC Counts I and II on January 3, 2025 (Dkt. 41).

---

[1]  Plaintiffs previously filed a Motion to Lift the Stay (Dkt. 169) and a Corrected Motion (specifically, to include a certificate of conference, Dkt. 171) (together, the "Original Motion") that sought to permit not only written discovery but also a prompt deposition of PJ Samson.  The request to depose Mr. Samson was based on concerns regarding his employment status and health-related availability for deposition. Before filing the Original Motion, Plaintiffs' counsel met and conferred with defense counsel through two phone calls and written correspondence to ascertain Mr. Samson's status. While the parties disagree about what was communicated during the meet and confer process, Plaintiffs understood when filing the Original Motion that Mr. Samson had retired and had previously suffered from health issues. On April 7, 2026, Defendants represented in writing that Mr. Samson had not retired and that, although he previously experienced medical issues requiring hospitalization, he does not currently have any health issue affecting his availability for deposition. Based on those representations, Plaintiffs withdrew the Original Motion without prejudice. (Dkt. 172.)  This renewed Motion does not seek to lift the stay for purposes of deposing Mr. Samson at this time.

Defendants Middleby and Alkar moved (without opposition) for leave to file their Counterclaim on June 13, 2025 (Dkt. 92).

The three Pending Motions were fully briefed as of the following respective dates: February 14, 2025 (reply on motion to dismiss AC Counts III-IV, Dkt. 64); July 9, 2025 (surreply on motion to compel arbitration, Dkt. 107); and October 9, 2025 (reply on motion to dismiss Counterclaim, Dkt. 150).

### B. Written Discovery

At no time while the Pending Motions were being briefed did Defendants seek to stay discovery. It was not until after Plaintiffs completed their document production on October 24, 2025, and a week later moved to compel Defendants to complete their paltry 900-document production (Dkt. 155), that Defendants sought a discovery stay on November 14, 2025 (Dkt. 165).[2]

Defendants' thin production is plainly self-serving, as it consists primarily of pre-acquisition emails between the Plaintiffs that are in Defendants' possession, and otherwise mostly contains anodyne materials exchanged during the parties' acquisition negotiations. Defendants' Stay Motion clearly intended to exploit their advantage in controlling – and withholding—the vast majority of the relevant documents. Before presentment of the Stay Motion or entry of any briefing schedule, on November 24, 2025, the Court granted the motion and stayed discovery (Dkt. 167).

Since then, the passage of time has only reinforced the need for party written discovery to move forward.

---

[2] The same day that Defendants filed the Stay Motion, they filed a response in opposition to Plaintiffs' motion to compel discovery (Dkt. 163), which like the Stay Motion, is filled with multiple gross mischaracterizations of Plaintiffs' allegations and positions. The discovery stay was entered soon after and before Plaintiffs' date to file their reply in support of their motion to compel, which motion was denied without prejudice. (Dkt. 167).

### C.      Defendants' Continuing Breaches

Developments since entry of the stay reflect the relevant facts continue to evolve and that the written discovery Plaintiffs seek remains important and timely.

For example, on January 13, 2026, Defendants touted to the world an "*exclusive* partnership with Filtration Automation[.]" ("Mastering the Modern Poultry Line: How Middleby Delivers Full Line Solutions for Global Poultry Processing," LinkedIn (Exhibit A at 3) (emphasis added).)  Consistent with Plaintiffs' allegations (AC ¶¶ 65-67), Defendants thus advertised to the marketplace that Filtration Automation was not selling to MP Equipment's competitors *or* to owners of such competitors' fryers. The "exclusive partnership" statement, though later removed, was, among other things, a public admission that Defendants were operating Filtration Automation to benefit MP Equipment.

Defendants' conduct since then is only more blatant. At a recent industry event, Defendants showcased a new fryer design that incorporates Filtration Automation's crumb recovery technology directly into an MP Equipment fryer itself. (*Compare* Exhibit B (earlier marketing materials, showing Filtration Automation's Crumb Recovery System positioned alongside an MP Equipment fryer), *with* Exhibit C (recent marketing materials, showing MP Equipment's new fryer design appropriating Filtration Automation technology directly into the fryer itself).) That is another clear breach of the parties' Share Purchase Agreement, with Defendants taking Filtration Automation technology to bolster MP Equipment during the earnout period. (*Compare* AC ¶ 64.)

These developments underscore that the factual issues at the core of the case remain active and that further delaying written discovery does more than postpone the inevitable. It makes discovery harder to complete fairly and efficiently as time passes, memories fade, custodians

change roles or leave, cover stories may be woven, and relevant materials become more difficult to locate and reconstruct.

### III.  ARGUMENT

Plaintiffs seek limited relief. Continued enforcement of the stay causes concrete prejudice, does not materially simplify the issues, and does not meaningfully reduce the burden of litigation. To the contrary, the stay preserves a one-sided tactical advantage and continues to postpone written discovery in this 2024 case that will be required *regardless* of how the Court resolves the Pending Motions.

While the "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket . . . [h]ow this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *Gamon Plus, Inc. v. Campbell Soup Co.*, No. 1:15-cv-08940, 2021 WL 9909704, at \*1 (N.D. Ill. June 8, 2021). In deciding whether a stay is appropriate, "courts consider the following factors: (1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party, (2) whether a stay will simplify the issues in question and streamline the trial, and (3) whether a stay will reduce the burden of litigation on the parties and on the court." *Se-Kure Controls, Inc. v. Sennco Solutions, Inc.*, 675 F. Supp. 2d 877, 879 (N.D. Ill. 2009).

Each factor now favors lifting the stay as to party document discovery and interrogatories.

### A.  A Continued Stay Unduly Prejudices Plaintiffs And Advantages Defendants

The prejudice to Plaintiffs is concrete and ongoing. *First*, the stay preserves a one-sided discovery record created by Defendants' tactics and timing. Plaintiffs substantially completed their production just weeks before Defendants moved to stay discovery, while Defendants withhold all but 900 curated documents that Defendants chose to produce without regard to Plaintiffs' search

terms. That sequence locked in a practical advantage for Defendants and deprived Plaintiffs of access to the core records that remain in Defendants' possession.

*Second*, litigation preparation does not stop when a discovery stay is entered. Defendants can continue reviewing Plaintiffs' production, interviewing witnesses, refining arguments, developing rebuttal points, preparing experts, briefing motions, and shaping settlement positions. Plaintiffs cannot do the same with the central body of corporate records because Defendants have withheld them.

The prejudice is particularly apparent. Should either party be permitted to amend any portion of their pleadings in response to rulings on the parties' cross-motions to dismiss, Defendants will have all of their own records *and* all of Plaintiffs' records to work from, while Plaintiffs will have only their own limited records—Filtration Automation's corporate records were delivered to Defendants at closing, and Defendants produced only 900 selected records to date. This would be patently unfair and prejudicial to Plaintiffs.

Thus, continuing with a complete discovery stay does more than pause formal discovery. It deepens the multiple tactical advantages Defendants created by seeking the stay only *after* securing Plaintiffs' production.

For each of these reasons, continued enforcement of the stay "will unduly prejudice or tactically disadvantage" the Plaintiffs. *Se-Kure Controls*, 675 F. Supp. 2d at 879.

## B.     The Same Document Discovery Awaits

Continuing the stay will not materially simplify written discovery. It will only delay it.

No matter how the Court resolves the Pending Motions, Defendants will still have to collect, review, and produce the same central documents from the same custodians for the same

relevant time period. That is because the factual issues already joined in AC Counts I and II substantially overlap with the facts bearing on the challenged claims and counterclaims.

Defendants have answered Counts I and II. Those claims concern, among other things, the parties' negotiation of the transaction, post-closing operation of Filtration Automation, product development, sales and commercialization decisions, treatment of Filtration Automation's technology and business opportunities, and the relationship among Filtration Automation, MP Equipment, and other Middleby entities. A significant factual record remains on this Court's board, whether any or all of the challenged claims and counterclaims are dismissed or an accounting arbitration proceeds concerning the calculation of monetary "amounts remaining in dispute" from the First Earnout Statement (Dkt. 84).[3]

Count I illustrates the point. There, Plaintiffs allege that Alkar breached the Agreement by operating Filtration Automation for the benefit of MP Equipment, including by misappropriating Filtration Automation technology for MP Equipment, diverting oil-filtration technology development away from Filtration Automation to MP Equipment, interfering with Filtration Automation's operational decision-making, restricting Filtration Automation's sales opportunities, removing founder/leader Gary Haddock ("Gary") under a pretext, and placing MP Equipment's leader in control of Filtration Automation to complete the siphoning of Filtration Automation's technological and business value to MP Equipment. (AC, ¶¶ 20-22, 26-28, 45, 49-51, 59-87). The facts needed to prove those allegations remain at issue regardless of how the Court resolves the Pending Motions.

---

[3] While Count II of the AC concerns a relatively straightforward legal matter—whether Alkar breached the contractual indemnity (Dkt. 32 ¶¶ 95-97)—Count I encompasses the core of Plaintiffs' case.

Those allegations arise directly from the text of the Agreement. Plaintiffs' right to earnout payments is determined, in part, by the "Net Sales" of Filtration Automation. (Dkt. 32-A at 3.) The Agreement defines "Net Sales" as "the aggregate net sales of the Company . . . as such relate to the Business, determined in accordance with GAAP." (*Id*. at 5.) In turn, the Agreement defines "Business" as "the Company's business of designing, developing, manufacturing, distributing, marketing, selling and servicing oil filtration and associated products, taken as a whole." (*Id*. at A-1.) Thus, Defendants' interference with Filtration Automation's technology development, their diversion of Filtration Automation's technology, operations, and business opportunities to benefit MP Equipment, and their use of Filtration Automation's technology in MP Equipment products go to the core of Count I and will require the same written discovery regardless of the disposition of the Pending Motions.

Consistent with that theory, Plaintiffs' written discovery seeks core materials concerning sales directives, product development, commercialization, merger negotiations, the acquisition and integration of Filtration Automation, and post-closing operational decisions. Those materials go directly to the claims on which the parties are already at issue and will remain relevant whether or not the challenged claims or counterclaims survive.

Representative examples of Plaintiffs' Requests for Production ("RFPs") illustrate that the requested discovery goes to the heart of the allegations in Count I and will remain relevant, no matter the outcome of the Pending Motions. For example, Plaintiffs' RFP No. 14 seek "documents and communications relating to Defendants' plans for the post closing integration of Filtration Automation." (Dkt. 155-D at 10.) RFP No. 6 seeks "documents and communications relating to the strategic planning for the financial growth of MP Equipment from January 1, 2020 through the present." (*Id*. at 9.) RFP No. 17 requests "documents and communications relating to the design,

development, manufacture, distribution, marketing, sales, and/or servicing of" Filtration Automation's Micron Pro Mini and Floating Crumb Remover, and Defendants' hot oil filtration or associated products. (*Id*. at 10.) These requests go directly not only to whether Defendants diverted activity and revenues that, for earnout purposes, were required to be counted within Filtration Automation's "Business" as defined in the Share Purchase Agreement, but also to Defendants' motive, intent, and plan to operate Filtration Automation as a tool for the benefit of MP Equipment—which is central evidence the fact finder will consider when deciding Count I.

The same is true of Plaintiffs' requests concerning the negotiation of the Agreement and the acquisition and integration of Filtration Automation. Discovery into those subjects is essential to understanding both what Defendants understood Filtration Automation to be acquiring and how they intended to operate it after closing. Plaintiffs' RFP Nos. 5, 12, and 13 therefore remain relevant regardless of the disposition of the Pending Motions. (*Id*. at 8-9, 10.)[4] Indeed, Defendants acknowledged, as they must that, their negotiations with Plaintiffs are relevant not only to fraud counts challenged in Defendants' motion to dismiss, but also to Count I, when within their limited 900-document production Defendants produced some (but not all) documents from those negotiations.

So too with respect to Gary's termination and the post-closing change in control over Filtration Automation. The relevant question is not simply whether Gary was terminated, but why Defendants removed him so quickly, installed MP Equipment's leader over Filtration Automation,

---

[4] To the extent Defendants may try to isolate one or more RFPs and argue that those requests are irrelevant or overbroad, that would not alter the analysis here. The parties have already spent substantial time meeting and conferring regarding the scope of Plaintiffs' requests, narrowing them where appropriate, and any remaining disputes can be addressed through the ordinary discovery process. Such disputes do not change that the overwhelming majority of Plaintiffs' RFPs seek discovery central to Count I and that the stay should be lifted.

and then operated Filtration Automation in a manner that favored MP Equipment and other Middleby affiliates at Filtration Automation's expense. Plaintiffs' discovery requests go to these core issues, including RFP No. 24, which seeks documents and communications relating to his termination; No. 28, which seeks documents and communications relating to the installation of PJ Samson as Gary's replacement; and No. 35, which seeks documents and communications relating to succession planning for Filtration Automation. (*Id*. at 12-13.) Each request bears directly on Plaintiffs' theory that Defendants operated Filtration Automation to capture its value and use it to benefit their other brands, at the expense of Filtration Automation and Plaintiffs' earnout rights.

Thus, regardless of how the Court resolves the Pending Motions, Defendants will still have to produce custodial and non-custodial records from the same core executives and managers, for the same period from late 2022 to the present, concerning the same or overlapping issues. Continued enforcement of the stay will not narrow that discovery, only delay it unnecessarily.

### C. Continuing The Stay Will Not Lessen The Litigation Burdens On The Parties Or The Court

A continued stay does not reduce the burden of litigation. It shifts that burden into the future, where it will be harder and more expensive to manage. This case has been pending for over 18 months, the parties are at issue on core claims, and yet Defendants have produced only 900 documents and discovery has been at a standstill since October 2025.

The relevant events date back to 2022. As time passes, memories fade, witnesses become harder to reach, health issues can intervene, and business developments become more difficult to reconstruct from a cold record. Public-facing materials disappear. Employees leave. The discovery will still have to be completed, but the longer it is delayed, the more difficult and costly it becomes to do it well.

11

That concern is not abstract here. Even during the pendency of this litigation, Middleby has announced its intention to spin off its food processing group, which includes MP Equipment and Filtration Automation, into a new publicly traded company, targeting completion of the spin-off in the coming months. *See* Middleby 10-K at 3, attached as Exhibit D. Intervening corporate developments may influence or, worse yet, supplant, witnesses' memories of disputed events. Plaintiffs Gary and Debbie Haddock are now in their early sixties. With the parties already at issue, and Plaintiffs having completed their own production, further written discovery from Defendants is inevitable. Plaintiffs should be entitled to have that discovery move forward on a reasonable timetable, particularly where the same core document discovery will be required in any event.

The sensible and necessary course is to allow party document discovery and interrogatories to proceed now. That approach preserves evidence, balances the equities in the event either party needs to amend a pleading, and moves the case forward along discovery paths that will remain necessary regardless of how the Court resolves the Pending Motions.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (a) lifting the discovery stay as to party document discovery and interrogatories; and (b) granting them such other and further relief as the Court deems appropriate.

> Respectfully submitted,
>
> Gary Haddock, individually and in his capacity as Sellers' Representative, Deborah Haddock, Christopher Haddock, and Stephen Haddock
>
> By: /s/ *Jared M. Walsh*
> One of Their Attorneys

12

Jared Walsh (#6334709)
*jwalsh@atllp.com*
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, MO  63105
(314) 621-5070

Stephen J. Siegel (#6209054)
*ssiegel@atllp.com*
Serena G. Rabie (#6336601)
*srabie@atllp.com*
ARMSTRONG TEASDALE LLP
100 N. Riverside Plaza
Chicago, IL  60606
(312) 419-6900

## CERTIFICATE OF CONFERENCE

Undersigned counsel hereby certifies that, on May 7, 2026, he notified opposing counsel by email that Plaintiffs intended to file a motion seeking to lift the stay as to party written discovery and requested Defendants' position as to whether they consented to the relief sought. Opposing counsel responded via email on May 8, 2026, indicating that they do not consent to the relief Plaintiffs seek.

  /s/ *Jared M. Walsh*

13

**<u>CERTIFICATE OF SERVICE</u>**

Jared M. Walsh, an attorney, hereby certifies that on May 8, 2026, he caused a true and correct copy of the foregoing ***Plaintiffs' Motion to Lift the Stay of Written Discovery*** to be filed electronically with the court's CM/ECF system, and that notice of this filing was sent by electronic mail to all parties by operation of the Court's electronic filing system.

        /s/ *Jared M. Walsh*